**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**


LAURA LEE SHARP,                        )
                                        )
              Plaintiff,                )
                                        )
       v.                               )           02:  10-cv-0910
                                        )
MICHAEL J. ASTRUE,                      )
Commissioner of Social Security,        )
                                        )
              Defendant.                )

**MEMORANDUM OPINION AND ORDER OF COURT**

September 16, 2011

**I.     INTRODUCTION**

Plaintiff, Laura Lee Sharp ("Plaintiff") brings this action pursuant to 42 U.S.C. § 405(g),

for judicial review of the final determination of the Commissioner of Social Security

("Commissioner") which denied her application for disability insurance benefits ("DIB") and

supplemental security income ("SSI") under Titles II and XVI of the Social Security Act, 42

U.S.C. §§ 401-433, 1381 - 1383f ("Act").


**II.     PROCEDURAL HISTORY**

Plaintiff filed DIB and SSI applications on February 16, 2007, in which she alleged a

disability onset date of February 1, 2006 due to a major depressive disorder and degenerative

disc disease of the cervical spine.[1]   On June 19, 2007, Plaintiff's applictaions were initially

denied.  Thereafter, an administrative hearing was held on September 23, 2008, before

Administrative Law Judge Richard D. Brady ("ALJ").  Plaintiff was represented by counsel and

---

[1]        Citations to ECF Nos. 5 – 5-9, the Record, *hereinafter*, "R. at __."

testified at the hearing.  Larry Ostrowski, an impartial vocational expert ("VE"), also testified at the hearing.

On October 31, 2008, the ALJ rendered a partially-favorable decision, in which he found that Plaintiff was disabled from February 1, 2006 until June 5, 2008, but also found that Plaintiff had medically improved from her previous disabled condition to the extent that as of June 6, 2008, she could perform light and sedentary work with limitations.  The ALJ's decision became the final decision of the Commissioner on May 21, 2010, when the Appeals Council denied Plaintiff's request for review.

On July 12, 2010, Plaintiff filed her Complaint in this Court in which she seeks judicial review of the ALJ's decision.   The parties have filed cross-motions for summary judgment. Plaintiff contends that the ALJ's decision is not supported by the record.   The Commissioner contends that substantial evidence supports the decision of the ALJ which found that Plaintiff was entitled to a closed period of benefits only.  For the reasons that follow, the Court agrees with the Commissioner and will therefore grant the motion for summary judgment filed by the Commissioner and deny the motion for summary judgment filed by Plaintiff.


III.    STATEMENT OF THE CASE

A. General Background

Plaintiff was born on August 16, 1969, and was thirty nine years of age at the time of her administrative hearing.  (R. at 32).  Plaintiff has an Associate's Degree in accounting and computers from the West Virginia Career Institute in Uniontown, Pennsylvania.  (R. at 32, 50). Plaintiff last worked a regular, full time job in December 2005 as a Wal-Mart cashier and sales clerk.  In May 2006, she worked as a telemarketer, but quit after two weeks.  (R. at 34 – 36).

The VE classified Plaintiff's past work as a cashier as light and semi-skilled and the sales clerk position as light and unskilled.

At the time of the administrative hearing, Plaintiff resided with her paraplegic, wheelchair-bound husband, and three sons, ages four, seven, and twelve.  (R. at 33).

The parties do not dispute that from February 1, 2006 (her disability onset date) to February 2008, Plaintiff's depression was disabling.  Likewise, there is no dispute that from February 1, 2006 until June 5, 2008, Plaintiff's back and neck problems were disabling. However, the ALJ found that the medical evidence of record reflects that by the beginning of January 2008, Plaintiff began reporting that she was having no depressive effects, behavior or episodes and that as of June 6, 2008, her physical limitations had improved to the point that she was no longer disabled.

Because there is no dispute that Plaintiff was disabled from February 1, 2006 through June 5, 2008, the Court will not address the medical evidence from that period, except as a comparison to the evidence from the time period when the ALJ found that Plaintiff was no longer disabled, June 6, 2008 and thereafter.


B.  Psychological Limitations

The medical evidence of record establishes that from February 2006 to February 2008, Plaintiff had depression which was disabling and prevented her from working; she attempted suicide several times, she was hospitalized, and she could not work.  However, the ALJ found that the medical record of evidence also establishes that with proper medication and therapy, Plaintiff improved to the extent that she could return to sedentary or light work with limitations.

By January of 2008, it was noted that Plaintiff was compliant with medication, and that her medications worked well for her.  (R. at 495 – 556).  She denied suicidal ideation, depressive symptoms, anxiety symptoms, racing thoughts, and impulsivity.  (R. at 495 – 556).  Plaintiff was alert and oriented, had organized thought and normal speech, and was found to be in a good mood.  (R. at 495 – 556).  No deficits in attention or concentration were noted.  (R. at 495 – 556).  Plaintiff's appetite was good, her energy level was good, she socialized with friends and family, had a good interest level, and she reported no current stressors.  (R. at 495 – 556). Plaintiff indicated that she was going to volunteer with her son's Head Start program at his school.  (R. at 495 – 556).

Also in May of 2008, Plaintiff was evaluated William Ryan, M.D., and was noted to exhibit a good disposition, adequate response to her medication without side effects, good energy level, good sleep, normal appetite, positive attitude, and appropriate affect.  (R. at 495 – 556). Plaintiff denied any significant depression or major anxiety.  (R. at 495 – 556).  Her thoughts were goal directed.  (R. at 495 – 556).  Plaintiff was noted to require only intermittent counseling services.  (R. at 495 – 556).  In June of 2008, Dr. Ryan reported that Plaintiff's mental status was stable, and that there was no evidence of self-harm preoccupation or clinical depression.  (R. at 495 – 556).  On July 3, 2008, Plaintiff presented to Dr. Ryan with "essentially stable mental status factors without evidence of any self-harm preoccupation or clinical depression."  (R. at 515).

At the ALJ hearing, Plaintiff testified that her depression without aggravating circumstances did not prevent her from working.  She testified that she could not work "right now" because "I have a lot of issues going on at home with my husband" and "I'm in the

process of leaving him and he doesn't know." (R. at 50-51). Plaintiff continues to see her doctor at Chestnut Ridge Counseling Services, Inc., once every two months and her therapist once a week. (R. at 44). She treats her depression with Zoloft and has no side effects. (R. at 44, 48-49).

C.  Physical Limitations

In 2005,  Plaintiff saw John J. Moossy, M.D., because her back, neck and arm hurt after she picked up a 40-pound bag at work.  A cervical MRI showed no disc herniation or spinal stenosis, but only degenerative disc disease.  As of March 2008, Plaintiff was still experiencing neck pain radiating to both arms.  On March 12, 2008, Plaintiff had a successful anterior cervical discectomy and fusion of C5-6 and C6-7 with no complications.  (R. at 400).  Post surgery, Plaintiff attended two months of physical therapy during which time she experienced little pain. After those two months though, Plaintiff reported that she was experiencing five-out-of-ten pain, with continued numbness and tingling in both arms and neck stiffness.  Plaintiff indicated that the pain was moderate when reading and driving, but she experienced no pain in personal care and lifting light to medium weights.  Plaintiff could engage in most of her recreational activities.

In early June 2008, after eight physical therapy sessions, Plaintiff expressed modest overall improvement with increased cervical range of motion.  As of June 6, 2008, Plaintiff's reflexes were intact, she had full range of motion and strength in both shoulders, her incision was well healed, and her plating and bone graft were in good position.   She was discharged from physical therapy because she did not show for two consecutive appointments, but she continued a home exercise program.

At the ALJ hearing, Plaintiff testified that she still has pain in the back of her neck, shoulder blades, and spine with numbness in her left arm and hand.  However, Plaintiff was seeking no treatment at the time of the hearing.  She also testified that she was able to catch a baseball and football with her son for 15 minutes at a time and she had no problem driving one hour to the ALJ hearing.  Plaintiff takes Tylenol for her pain, not prescription medicine.

D.  The Testimony of the Vocational Expert

The ALJ asked the VE if a hypothetical person of Plaintiff's age, educational background, and work experience would be able to return to Plaintiff's past relevant work, or would be eligible for a significant number of jobs in the national economy, if the hypothetical person were limited to light exertional jobs requiring no more than occasional pushing, pulling, handling, or fingering with the left upper extremity, no climbing, only occasional use of stairs, only occasional balancing, stooping, kneeling, crouching, or crawling, no concentrated exposure to temperature extremes, dampness, or vibrations, and involving only unskilled tasks, one to three-step instructions with no detailed or complex social interaction, and only simple work related decisions.  (R. at 55).  Further, the hypothetical person would be capable of responding appropriately to work situations and routine changes in an unskilled work setting.  (R. at 55).

The VE replied that such a person would not be able to return to any of Plaintiff's past relevant work.  (R. at 55).  However, such a person would be capable of engaging in work as a "storage facility counter clerk," an "office helper," and a "marker." (R. at 56).

The ALJ then asked what employment opportunities would be available to the hypothetical person, if he or she were only capable of sedentary work. (R. at 56).   The VE responded that such a person would be capable of working as an "account clerk," a "telephone

quotation clerk," and a "table worker." (R. at 57). Additionally, the hypothetical person could be off-task up to ten percent of any given work day. (R. at 58). If the person missed two or more days per month on a continuous basis, however, they would be precluded from all substantial gainful activity. (R. at 58).

## V.   DISCUSSION

Based on the medical evidence of record and the testimony of the VE, the ALJ concluded that from the period February 1, 2006 through June 5, 2008, Plaintiff suffered from severe medically determinable impairments in the way of major depressive disorder and degenerative disc disease of the cervical spine (R. at 16). As a result, Plaintiff was found to be disabled for a closed period beginning February 1, 2006, and ending June 5, 2008. (R. at 12, 21 – 23). However, the ALJ determined that Plaintiff's functional limitations had improved such that, as of June 6, 2008, Plaintiff was no longer disabled, and – consistent with the testimony of the vocational expert – Plaintiff was capable of engaging in substantial gainful employment. (R. at 24 – 26).

Plaintiff objects to the determination of the ALJ, arguing that treatment notes from Chestnut Ridge are not consistent with the ALJ's conclusion that Plaintiff's mental impairments improved, and likewise, that treatment notes from her orthopedic physicians – as well as her subjective complaints – are not consistent with improvement in her physical medical conditions. (ECF No. 12 at 12 – 17). As a result, Plaintiff argues the ALJ's hypothetical to the VE  allegedly did not adequately portray Plaintiff's credibly established limitations.

When rendering a decision, an ALJ must provide sufficient explanation of his or her final determination to provide a reviewing court with the benefit of the factual basis underlying

the ultimate disability finding. *Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir. 1981) (citing *S.E.C. v. Chenery Corp.*, 318 U.S. 80, 94 (1943)).  The ALJ need only discuss the most pertinent, relevant evidence bearing upon a claimant's disability status, but must provide sufficient discussion to allow the court to determine whether any rejection of potentially pertinent, relevant evidence was proper. *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 203 – 04 (3d Cir. 2008) (citing *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 121 (3d Cir. 2000); *Cotter*, 642 F.2d at 706).  In the present case, following a thorough discussion of the record, it is clear that the ALJ met his responsibilities under the law.

In accordance with 42 U.S.C. § 423(f), a claimant's DIB or SSI benefits may be terminated when disability has ceased. *DuPont v. Astrue*, 2010 WL 4625540, *5 (W.D. Pa. Nov. 4, 2010) (citing *Losser v. Astrue*, 2008 WL 3540597 *4 (W.D. Pa. Aug. 12, 2008)).  The ALJ may justify termination of benefits by presenting substantial evidence illustrating work-related medical improvement. *Palmer v. Astrue*, 284 Fed. App'x 873, 876 (3d Cir. 2008); 20 C.F.R. §§ 404.1594(b – c), 416.994(b).

A review of the record illustrates that Plaintiff has made substantial improvements in her psychological well-being, even applying for work in 2008 – just prior to the point in time that the ALJ determined Plaintiff was no longer disabled.  (R. at 20).  The longitudinal treatment history clearly shows significant improvement.  (R. at 16 – 20).  While Plaintiff correctly points out that her GAF scores, as assessed by her therapist, never moved above 50, the degree of limitation suggested by these scores conflicted with regular reports of ever decreasing depressive symptoms and a notably improved disposition despite ongoing environmental stressors.  (R. at 19 – 20, 24 – 25).

8

On July 3, 2008,  William Ryan, M.D., having treated Plaintiff over the course of several years – clearly indicated that Plaintiff no longer exhibited signs of clinical depression.  (R. at 19 – 20, 24 – 25).  He noted that Plaintiff was doing well on her medications and only required intermittent counseling.  (R. at 19 – 20, 24 – 25).  Plaintiff managed to care for her children, attend all of their sporting events, engage in social activities with friends, and reported low depression and better coping skills.  (R. at 19 – 20, 24 – 25).  This evidence – prevalent throughout the record – is clearly at odds with the sporadic GAF scores relied upon by Plaintiff to argue against medical improvement, despite explicit observations by Plaintiff's treating sources which indicated otherwise.  (R. at 19 – 20, 24 – 25).  The ALJ cannot be said to have improperly determined Plaintiff to have shown significant psychological improvement.  As such, the Court finds that the ALJ adequately accommodated all of Plaintiff's true limitations in his hypothetical to the vocational expert.

Similarly, while Plaintiff suffered substantial pain as a result of the condition of her cervical spine, the medical record indicated that Plaintiff saw immediate improvement following surgical intervention.  (R. at 19 – 20, 24 – 25).  In the months following her surgery, she reported to her physicians that her pain levels were greatly reduced.  (R. at 19 – 20, 24 – 25).  Medical imaging showed that her surgery had been successful.  (R. at 19 – 20, 24 – 25).  While Plaintiff may not have enjoyed complete relief of her symptoms, Plaintiff fails to illustrate how her remaining limitations were not adequately accommodated in the ALJ's hypothetical to the vocational expert.  Having presented a thorough review of the evidence of record and comparison of limitations prior to, during, and after the closed disability period, the Court finds that the ALJ properly justified his determination.

**VI.    CONCLUSION**

It is undeniable that Plaintiff has a number of impairments, and this Court is sympathetic and aware of the challenges which Plaintiff faces in seeking gainful employment.  However, under the applicable standards of review and the current state of the record, this Court must defer to the reasonable findings of the ALJ and his conclusion that while Plaintiff was disabled for a closed period, substantial evidence in the record illustrates Plaintiff's work-related medical improvement as of June 6, 2008.

For these reasons, the Court will grant the Motion for Summary Judgment filed by the Commissioner and deny the Motion for Summary Judgment filed by the Plaintiff.

An appropriate Order follows.

McVerry, J.

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

LAURA LEE SHARP,             )
                                )
        Plaintiff,        )
                                )
        v.            )      02: 10-cv-0910
                                )
MICHAEL J. ASTRUE,      )
Commissioner of Social Security,  )
                                )
        Defendant.     )

**ORDER OF COURT**

**AND NOW**, this 16th day of September, 2011, in accordance with the foregoing

Memorandum Opinion, it is hereby **ORDERED, ADJUDGED, AND DECREED** that:

1.    Defendant's Motion for Summary Judgment (Document No. 9) is **GRANTED;**

2.    Plaintiff's Motion for Summary Judgment (Document No. 11) is **DENIED**; and

3.    The Clerk will docket this case as closed.

                            BY THE COURT:

                            s/ Terrence F. McVerry
                            United States District Judge

cc:    Gregory T. Kunkel, Esq.
       Email: greg.kunkel@verizon.net

       Christy Wiegand,
       Assistant U.S. Attorney
       Email: Christy.wiegand@usdoj.gov